Ms. Paskowitz or Pescovich, please approach whenever you're ready. I think so. How do you pronounce your name? It's Paskowitz. Thank you. Good morning, Your Honors. May it please the Court. Jennifer Paskowitz on behalf of Attorney General James Slaughter and the Attorney General of the State of New Jersey. The issues presented... Are you reserving any time for rebuttal? I'm sorry, Your Honor. Yes, I am. Three minutes, please. Okay. Granted. The issues before this Court where the District Court granted Petitioner, now Appellee's, habeas petition on the basis of ineffective assistance of counsel for failing to object to certain... I don't think that's exactly based on failure to object. I take the gravamen of the argument to be, okay, even where there were some objections and it's sidebar, the Court said, yeah, this is a problem, did not ask for limiting instructions. And a competent attorney would have asked for repeated specific limiting instructions. There's only one at the end of the case and it's somewhat confusing. So let's focus on the limiting instructions, all right? Strickland, deficient performance and prejudice. Let's talk about deficient performance. What possible tactical reason is there for counsel not to want a drumbeat of limiting instructions, reminding the jury to use this only for showing where the gun came from and not, he's a bad guy for doing other burglaries. I want you to focus on the deficient performance piece right now. Absolutely, Your Honor. So first, there were two limiting instructions, one at the conclusion of a number of the witnesses' testimony. And respectfully, I would submit it wasn't confusing. It was explained to the jury that the testimony they had heard was with reference, was only for their consideration of the person who possessed the handgun, possession of the handgun and the identity of that person. The judge also gave a limiting instruction as to that effect in closing, also gave the instruction in the final charge. There were two total? Correct. All right. And they weren't tailored to the, okay, you just heard about this, but don't consider this as to, you know, the burglary of the chick casing place or Amaro Foods or whatever else. They were kind of boilerplate, very generically phrased. They weren't phrased specifically in terms of these facts, this Amaro Foods, this witness. Your Honor is correct that one was not given specifically after, for example, the testimony of Mr. Perez. It's not just that the timing wasn't right after, it's also that the wording was a very generic thing pulled straight out of the pattern instructions. Is that true? Not, not exactly, Your Honor. And I say that one of them mentioned both Amaro Foods and Next Step. Am I wrong on that? There's the, if I may. So as to why counsel may not have requested repeated, repeated use of these limiting instructions. Okay. From a strategic perspective, there comes the point where counsel may not want after every single witness that touches upon something that's arguably prejudicial. Because of course, all 404B evidence is prejudicial. That's, that's the point. And the instruction the judge administered to the jury referenced- Where are you in the record? Let's look at the instruction together. Is this the one at appendix 164 to 65 or 191 to 94? 164 to 165. Okay. I'm sorry. I'm just finding my place. I think I brought too much, not enough. Okay. So 164 to 165 was the instruction given after several of the witnesses. Okay. And it specifically references the attempt- And this appears to be right after lunch. Okay. Yes. It's not given immediately after one of the witnesses. It's given after lunch, after a batch of witnesses. That is accurate. Okay. And it does specifically reference the attempted burglaries of Amaro Foods, that was actually a completed burglary, and the Nextel store in Paramus. Explains that it's not permitted and talks about this has been allowed, here it has been allowed, and this is specific verbatim, for the very limited purpose of permitting the state to demonstrate or attempt to prove possession of the handgun involved in the identity of the person who possessed it. You may not use that evidence to decide that Mr. Rosa, if you find that he possessed or that he was involved at Amaro Foods or at the Nextel store, that he's therefore guilty of the present offense. Now it's a fine line, but it's a fair line. So it does reference Amaro and Nextel. It doesn't reference the extended chase in the swamp or anything like that. It does not. Okay. And the chase at the swamp or anything else, there's a reference to North Burglary in Paramus. That is correct, Your Honor, but there is also a separate charge immediately after that as to his flight in terms of consciousness of guilt. So there is the, on page 192, the, again, introduction referencing Amaro Foods and that it's alleged that the handgun was stolen from that business, et cetera, that he was an occupant in a vehicle that was involved in a pursuit in Paramus with reference to the eluding and that it was discarded. The one on 193 on flight looks like that is a very generic boilerplate one. It doesn't have a bunch of points. Why wouldn't a competent lawyer have asked for more than two? He could have gotten them. There were multiple points at which in the sidebar, the court said, this is really troubling. This goes broadly. Yes, I agree with you. There's a 404B issue here. It's very limited, but he didn't ask for more than these two. Respectfully, I think there are two reasons. One, that to repeatedly ask for it and repeatedly focus on the fact that now what you're hearing about are these other bad acts. Certainly, courts have recognized that the decision not to draw attention to something is a strategic decision that's entitled to deference. If I may interject, one of those court decisions was written by now Justice Alito when he said it may be quote, strategically preferable to omit such requests since the instruction might have the undesired effect of highlighting the other crimes evidence quote. That's basically what you're saying applies for this first one. Sometimes you just don't want to remind people of all the other crimes 404B evidence, right? That is correct. That makes a lot of sense when it's fleeting, but you would admit that the evidence here was pretty extensive 404B evidence. So the number of objections would seem to be tailored to how much of it. I think there's an argument that maybe the reference to not seeking an obstruction on the cocking of the gun, that might be okay. I don't want to draw attention to it. It was cut off mid-sentence, but the other stuff, the flight into the swamps was very extensive. Wouldn't you agree? I would. And the Amaro burglary, the Amaro Foods, that was extensive, right? The Amaro Foods burglary as described by the co-defendant was somewhat extensive.  I would respectfully disagree that as to Detective Clagg's testimony. The defense exhibits SA8 and 9 were very vivid photos of that door being ripped open like a can opener, all right? We're not talking about something that the jury could have blinked and missed. We're talking about a picture's worth a thousand words, and here this thing is being opened like a can opener. This is not something we could think, oh, hey, let's just hide ourselves and pretend it's not here. A good lawyer would deal with that up front, wouldn't he? Well, to come to my second, and I hope to also respond to your Honor's question, to come to my second point, it's important to keep this in the context too of what the defense was in this case. Defendant's defense was, I wasn't there. I was not part of this burglary ring. I didn't participate. So counsel also at some point had to make a decision as to what is going to contradict in the eyes of reasonable jurors the defense that defendant has chosen to put forward. My biggest concern, and just tacking on to what Judge Bibas said, the first trial, Judge Almeida said, look, I'm going to let you use 404B for identity only. If you put any evidence in as to the other crimes, if you put evidence in as to the cocking of the gun especially, it's going to be grounds for a mistrial. I assume they lived by what Judge Almeida told them in that first trial. Is that correct? That's my understanding, yes. And so then Judge Delahey in the second trial, after the hung jury in the first trial, Judge Delahey says, I'm going to adopt the same 404B ruling that Judge Almeida had done in the first trial. But then you have, I counted up seven items, like the opening statement of the prosecutor which compared the break-in methods used at Amaro Foods and this particular Willingboro burglary, the testimony of the Amaro Foods owner about stolen guns, the testimony of Detective Christine Clagg about the Amaro Foods scene, Nunez's, that's the co-defendant's testimony or co-conspirator's testimony, including the details of the Amaro Foods and attempted Nextel burglaries. Finally, Rose's counsel objected in one instance to a question about who was going to Nextel's store, the rest of you. His objection was sustained. Then he failed to request a limiting instruction, as Judge Bibas had noted. Then we go on to the Paramus, which is a year later. The cop was, the cop was closed by, and the person supposedly cocked his gun. I think that was the testimony of, on Appendix 20. The testimony, the Nunez testimony about events after the gun was thrown out the window. The defense counsel objected, but when his objection was overruled, he again failed to ask for limiting instruction. Then finally, the canine officer involved in the incident gave extensive and dramatic testimony about the pursuit. And Judge Della, he gave a partial limiting instruction, but the district court concluded that wasn't sufficient. Why after all of this, I get it. If you're a prosecutor, you go, okay, I got a hung jury. I may have to go, you know, into a gray area here, but this seems to be more than gray when Judge Almeida told you exactly what you could do and you couldn't do. Long, long question. You don't have to give us a longer answer. I think the only thing that exceeded the scope of what Judge Almeida anticipated was the unfortunate answer by Mr. Nunez as to cocking the gun, which the assistant prosecutor immediately then redirected him really with a leading question that said that he threw the gun because that's the answer he was intending to elicit. Because we then later have the gun found on the side of the road that's ultimately connected to the shooting of Officer Rogers and the Amaro Foods burglary. Certainly, that was not Mr. Nunez saying, you know, Mr. Rosa had an intent to shoot Officer McGovern as he stood at the side of the car. And the assistant prosecutor, and I apologize, I see my time's up, did his best to redirect the witness. As to the issue of the swamps, I think it's imperative to note that the jury instruction in New Jersey makes clear, and makes clear not only to juries, but really is the guiding jurisprudence as to counsel. It's not just a matter of fleeing. It's not just simple flight that goes to consciousness of guilt. It's some level of flight beyond just fleeing from a police officer in terms of resisting arrest, or obstructing. And that is what the jury instruction made reference to. They're really two different things. Flight coming in as consciousness of guilt evidence, yes. Is it technically also 404B evidence? It is because you're not permitted to flee from a law enforcement officer, the jury, that wasn't a charge before them. But when the court talks about, the court specifically instructed the jury that departure from a place where a crime has been committed does not constitute flight. And that's on page 193. If you find that a defendant fearing an accusation or arrest would be made against him on the charge or charges involved in the indictment, and took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all other evidence in the case as an indication. But this does look like one of the pattern jury instructions. It doesn't look like it's tailored to these facts. This consciousness of guilt flight instruction? Not specifically, no. But it's not really an other bad act. It's permitted to be introduced by the state as affirmative evidence. All right. We'll get you back up on record. Thank you, Mr. Aleiwa. What is your pronunciation again, so I don't screw it up? Aleiwa. Thank you. May it please the court, Adam Aleiwa on behalf of Apelli Kelvin Rosa. I just want to quickly address the limiting instruction issue. The limiting instructions did mention in a broad way the other burglaries. But I think I want to just two points with limiting instructions. First is there is this deluge of facts. And it's not just facts. Facts don't necessarily win trials. What wins trials is stories, narratives. And it's this drumbeat narrative that comes in about this signature crime, this burglary ring. And it builds up every single piece of evidence in this case. It enhances it. It enhances everything from the screwdrivers thrown out of the back window of the car to the statement my client makes later about having to use the gun. It builds up literally everything. And it builds up all the and it builds up the cooperator. Isn't there a presumption that juries follow limiting instructions? Yes, there is, Your Honor. Yes, there is. However, with that said, there's sort of always this counterbalancing with limiting instructions where they're presumed reasonable, they're presumed to be followed. But there's just a lot of discussion about how prejudicial the evidence is despite the limiting instructions and how specific the limiting instructions have to be. And that's the point I want to get to, which is they really have to, the jury sitting there are just laypeople. And they're going to intuitively use this other bad acts evidence in a way that they're not supposed to. But let me just tie this to performance, right? Attorney who's doing performance says, okay, I got two limiting instructions in this case. I presume that the jury is going to follow those because that's a point of law. Somehow my performance is deficient because I didn't ask for more limiting instructions that the jury and more specific limiting instructions that presumably the jury would as well. So it strikes me that, you know, I mean, why is it, you know, you got two, you know, what's the magic number for an attorney in this case before it becomes, you know, standard performance, or at least not deficient performance? I guess, you know, your position is two is not enough. Well, I think, so I think there's a pretty bright line in Giuseppe, the actual Supreme Court case that talks very extensively about limiting instructions, where the bright line is, they have to be factually specific. And I think this case is a great, great exam. Which case should we look at for that? What's your best authority for that? It's the New Jersey State case, US, I mean, not US, I mean, State v. Giuseppe. Oh, the New Jersey State Supreme Court case. Yes. Okay. Yes. So state practitioners in New Jersey do have guidance on limiting instructions. It's pretty detailed guidance. It's not just about numerical, oh, it was only two, you should have asked for more. It has to be factually specific. And this is a case I think demonstrates exactly why that's the rule. And the reason why is because you have this other acts evidence that could be used very intuitively in a way that's not appropriate. And one of the most obvious intuitive ways is there is this signature crime, there is this pattern and mode of operandi. And I think it was the defense attorney's obligation to take to destroy that narrative. It's a narrative, a very compelling narrative that's built on prohibited evidence. Just from the point of view of the limiting instructions, setting aside objections, just the limiting instructions, they should have been factually specific as to what the prohibited uses and the permitted uses. And the New Jersey State court case very clearly sets that bright line. If it is such a bright line, what's the number in this case? I don't think that there is. You just said there's a bright line, but you don't want to number. So I just want a number. You can't say there's a bright line, everyone would know it, and then not give me a number. It can't be both. I understand what you're saying. The bright line, I meant to say the bright line is the factual specificity and the timing. So if you're going to do it, it has to be when the bad acts coming, when that evidence is coming in, do it when it's coming in and make it factually tailored to the bad. Judge Ambrose made reference to seven times. Now, there's one during the prosecutor's opening statement, and there's disagreement among lawyers to object during the opening statement to seem obstructionist. But then you've got six of them that are tied to evidence. Why not ask for a limiting instruction at the end of each substantial body of testimony? I don't know if all seven count as substantial, but at least four or five of the witnesses are. Why not have one at the close of each witness who spends substantial time on the details of these burglaries? That's right. I mean, I think even if Giuseppe talks also, you talk about temporal proximity, why not ask for limiting instruction right after the witness as opposed to let's wait until after lunch break? I agree. And even if you want to say that the only limiting instructions that were needed were two of them, even if that's the argument, they weren't factually tailored to this, again, this narrative. There's this drumbeat, incredibly persuasive narrative that should not have come in, and it's not being counteracted. Even if it had to be counteracted only in two limiting instructions that come at the end of the trial, it needs to come at least there. And that's not what we have. You have the limiting instructions and the jury instructions, and they're not saying this is a prohibited use. I know it's intuitive. I know jury, you want to say that this is like a movie-style sophisticated burglary. I know that's what your instincts are. You cannot do that. You cannot use that narrative to convict the client. So even if it's only those two limiting instructions, they have to be- We don't have to adopt a bright line rule here that in all cases, it would be the case, right? We have government's exhibits eight and nine that have these big photos of the Amaro burglary open up. It's not going to be every time there's 404B, your argument is limited to situations in which there's like a very substantial extended narrative of 404B that tells this story, correct? Yeah. I don't view this case as being one in which... I really do think it's pretty obvious. I mean, frankly, sorry, for one where there really should have been more to limit this narrative. I think this is a case where the facts present themselves as being pretty unique, a pretty unique failure on just the limited instructions ground to ask for more, to stop this narrative. I mean, at one level, we owe deference to New Jersey State Courts because I think you're right to look to the New Jersey Supreme Court for kind of what it has to say about limiting instructions. But we owe, under Edpug, great deference to the collateral review process of New Jersey State Courts. And they found no problem here. And so you're basically saying on the one hand, trust the New Jersey Supreme Court for its articulation of the standard. Don't trust New Jersey courts, even though federal law tells us to do that in their application of that standard. So how can you square your position with this concept of Edpug deference that we have to... We aren't on direct review. We aren't first crack collateral review. We're a few steps removed from both of those. And the process builds in that we defer. Correct, Your Honor. So I was talking about deferring to the state court on interpreting when to give limiting instructions and the nature of those limiting instructions. Fine, I know that. But answer Edpug there. Yeah, absolutely. So I don't think you should defer to the state court in the sense of their application of Strickland. So in application of the federal Strickland standard, I believe the New Jersey State Court misapplied that standard. So I don't think that they appropriately applied the correct federal standard. But we still defer to... So I mean, there's really two layers of deference here. You first have to defer to the strategic choices of counsel. So we can't get in the mind of counsel. We can't begin to second guess them all day long. So there's a lot of deference there. And then we defer to New Jersey State Courts on collateral review for their assessment of the strategic choices of counsel in light of their understanding of the New Jersey rules and the New Jersey standards. And so it strikes me that we may have a different read on what those questions are. But we don't have clean slate here. I understand that, Your Honor. I would say that in the state court applying the Strickland in evaluating the performance and evaluating the prejudice and evaluating everything, for multiple reasons, there just wasn't a correct application of Strickland. For example, I'm at a loss to see the strategic value in certain decisions made by defense counsel. Failure to just object at all. There was just no objection. Failure to get any sort of tailored limiting instruction. Setting aside the number of limiting instructions just to tailor it to this very powerful narrative that should not have come in. But New Jersey courts have already ruled on those, on collateral review, and said not a problem. That's right. But I think there's a misapplication of the Strickland standard. And one piece of evidence for the misapplication of the Strickland standard is they didn't articulate it textually correctly. They described it as a harmless error standard. What was the standard that was misapplied? The Strickland standard, Your Honor. Okay. What was said that was not in line with the Strickland standard? Reasonable probability that there will be a different result. What was the standard that the court applied? The court applied, as far as I read the paper, as a harmless error standard. Essentially, Rossa would need to prove that a manifest injustice clearly resulted from the con. The harmless error would be, for example, yes, it was a problem, but there was overwhelming evidence the other ways. Something like that. They didn't use the language Strickland. They used the language of harmless error. I researched New Jersey harmless error standard. It does not appear to be the same as the Strickland standard. So I don't think they applied the correct Strickland standard. If I can add just one question relating to the why the habeas petition didn't mention this trial with respect to the testimony of Nunez about the cocking of the finger indicating a gun in the Paramus incident. Why would that have not been front and center with respect to a habeas claim? So the sort of pro se federal petition, Judge Almeida said, if you do that, it's grounds for a mistrial. Right. So there's multiple aspects of that that I can address. The first is it was raised in a general sense, in the sense of Sixth Amendment effective assistance of counsel. There is case law that suggests that you read especially pro se federal habeas petitions in a liberal way, in a sense of not overly technical. You raise the Sixth Amendment issue even if it wasn't raised, even if you find it wasn't fairly presented to the state court. There is case law that says that if it's not presented fairly to state court, as of right now, there's no state remedy for Mr. Rosa. So it's exhausted. He can't go to the state to vindicate that claim of the mistrial claim. So it's for all practical purposes exhausted. But I believe it was fairly presented. But even if you find it wasn't fairly presented to the state court, it is now exhausted. And if you find that it was procedurally defaulted, there is still a way of reaching the merits on the mistrial claim, in the sense of if it was procedurally defaulted, you could still reach the merits so long as you find that his post-conviction relief attorney was ineffective in not presenting this to the state court. Isn't the best argument you have that the government didn't say you forfeited? Yeah, that's another argument, which is, look, it was a judgment called by Judge Baum to address this issue and deal with it. And it hasn't been raised yet. Can I ask you to respond? Judge Pipps was asking your friend on the other side, asking about, well, there's this presumption that juries follow their instructions. Can we just say, like, OK, as long as there's one instruction at the end of the trial that there's just it's reasonable for any old defense counsel to just rely on a generic one, whether the specific one, or a single instruction rather than seven? Let me hear your clear response to that. So I think two things. One, the New Jersey law says that relying on one at the end of the trial isn't performance, isn't sufficient performance. But even if that were the standard that just one limiting instruction at the end of the trial is sufficient and a jury will follow that, it wasn't tailored in this specific set of facts. It just obviously wasn't tailored to the prejudice that was coming in. It was this drumbeat, overwhelming narrative based on inappropriate evidence that really should have specifically been dealt with and disarmed with a specific limiting instruction. So I just don't, even if it's just one limiting instruction, I still don't think that was anywhere near sufficient performance by defense counsel. Can I jump in back on the mistrial point? It strikes me that the district court kind of sua sponte found the mistrial point related to failure to ask for a mistrial based on cock the weapon line of testimony. That's not normally how habeas works. You normally don't get a district court doing a sua sponte. I've found something that no one's presented to me before. And so if the district court did that sua sponte, doesn't the district court also have the to then sua sponte raise the most natural defenses? If it's not going to play by the party presentational, it begins to strike me as a real problem if the district court says, aha, I've got a new theory, and then ignore procedural default, which is a pretty resounding defense to these sorts of things, and at least conduct no analysis of that. Why isn't a remand to the district court on this issue to say, look, maybe because the government didn't address this issue, you can do it sua sponte. But what we can't have you do is do a sua sponte analysis without a very pregnant procedural default defense that's right there, because you can't really fault the government for not raising the defense in response to an argument that wasn't raised. That the district court on that issue to say, fine, you sua sponte raised it, but you can't just sua sponte pick one side's arguments. You have to round out the analysis of procedural default. So I think there's multiple reasons. I think the first is that the district court judge is given a fair bit of deference to, so the client raised the Sixth Amendment, my client was ineffective, he failed to be effective. There's case law that says that you could kind of piece together what the client's trying to get at. And the mistrial issue is a subcategory of the Sixth Amendment issue. It's a Sixth Amendment claim. But even setting that aside, the state had the opportunity to raise it on appeal. I mean, they could have said, Judge Baum, she didn't address this issue, she didn't give due deference. And so we're raising it, but they didn't. It kind of feels weird, right, to sit there and fault them for forfeiting something when the district court didn't fault your client for forfeiting something. It feels a little weird, right? But even if Kevin Rosa procedurally defaulted the mistrial issue, there's still a way of reaching that issue that Judge Baum had. So there's case law that says if the judge finds that the claim has merit, it could reach, and that the reason why it wasn't raised was an exercise of ineffective assistance to counsel on behalf of the post-conviction relief counsel, that therefore, the judge, the district court, could move on to the merits of the case, the merits of that claim. So she had due discretion to move into the merits. Thank you, Kelsey. First, to address the issue of the mistrial. It was not raised by petitioner below. Petitioner the language of ground two was defense counsel was ineffective for failure to object to highly prejudicial trial testimony. The only facts he gave underlying that claim were to literally write to cite to two sections in his appendix, one of which was a lengthy block about 31 pages, 32 pages. That was the procedural history and statement of facts from one of his prior counsel's briefs. It touched on any number of issues and contained one reference in a block quote to that language of Judge Almeida's as to if like, or excuse me, if the intention to shoot the officer during the Paramus eludings reference, there would be a mistrial. There's no legal argument contained in it. It's just a portion of a previous brief. The more pointed section to which she points was a three-page section, two to three-page section that went to the issue of failing to request limiting instructions. And that cited two pages that were directly from PCR counsel's brief. A defendant or excuse me, a petitioner has to fairly present a claim and that's pursuant to McCandless in a manner that puts everyone on notice of what's being argued. That didn't happen here. And to ask why... I guess, can a state government forfeit an exhaustion or procedural default issue by failing to raise it in its briefing on habeas? I don't think it's jurisdictional, is it? Well, pursuant to subsection D3 of 2254, the state waiver exhaustion, an exhaustion defense can't be waived. Procedural default, slightly different. Certainly it can be if the state gives an affirmative response that a petitioner has exhausted all of his and that's in Sharif versus Cathol. However, that was truly an express waiver in that case. In that case, the respondents answered that it appeared he had exhausted his state court remedies as to the issue since he presented it to the highest court. In this case, that was not an in-respondent's answer. And in fact, respondents noted two grounds in the petition that it felt had not exhausted and or procedurally defaulted. And actually Judge Bum found in the state's favor on both of those claims. As to why it wasn't raised on appeal candidly, respondents saw this as an issue of Judge Bum raising the issue sua sponte, not one where petitioner had raised it in light of failing to exhaust remedies as to it because it wasn't fairly raised. Judge Bum referenced a number of things in the record that were not directly implicated or fairly raised by what petitioner raised in ground two and sort of just went through the record gleaning issues that she saw that she thought contributed to this ineffective assistance of counsel. So do you think procedural default applies here? At this point, certainly. I mean, petitioner has had the opportunity, the only reference in any of petitioner's filings in state court to requesting a mistrial is one reference in the brief of PCR appeal counsel, not PCR counsel. PCR counsel didn't argue it to Judge Cook. And it was not addressed by either Judge Cook on PCR or by the appellate in the PCR appeal decision. All right. We thank both counsel for a well-briefed and well-argued case. We'll take the matter under advisement.